

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2003

# Anker Energy Corp v. Consol Coal Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1590

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Anker Energy Corp v. Consol Coal Co" (2003). *2003 Decisions.* Paper 34.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/34

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-1590
_____

ANKER ENERGY CORPORATION;
KING KNOB COAL CO., INC.,

Appellants

v.

CONSOLIDATED COAL COMPANY; UNITED
MINE WORKERS OF AMERICA COMBINED
BENEFIT FUND; MARTY D. HUDSON, Trustee;
MICHAEL H. HOLLAND; Trustee; THOMAS O.S.
RAND, Trustee; ELLIOTT A. SEGAL, Trustee;
CARLTON R. SICKLES, Trustee; GAIL R.
WILENSKY, Trustee; WILLIAM P. HOPGOOD,
Trustee; *JO ANNE BARNHART, Commissioner
of Social Security Administration

*(Pursuant to Rule 43(c) F.R.A.P.)
_____

Appeal from the United States District Court
For the Western District of Pennsylvania
D.C. No.: 96-cv-01938
District Judge: Honorable William L. Standish
_____

Argued: October 22, 2003

Before: ALITO, FUENTES, and ROSENN, Circuit Judges.

(Filed: December 22, 2003)

Paul A. Manion (Argued)
Manion, McDonough & Lucas
600 Grant Street, Suite 1414
Pittsburgh, PA 15219

       *Counsel for Appellants*

Edwin J. Strassburger (Argued)
H. Yale Gutnick
David A. Strassburger
Strassburger, McKenna, Gutnick & Potter
322 Boulevard of the Allies, Suite 700
Pittsburgh, PA 15222

       *Counsel for Appellees*

_____

## OPINION OF THE COURT

_____

ROSENN, Circuit Judge.

This appeal presents to this court for the second time an issue that has its genesis in the terms of a Settlement Agreement entered into by the parties in 1982. Consolidated Coal Company ("Consol"), a long-time coal operator, decided to supplement its coal production by contracting in 1975 with King Knob, a contract mining company, to mine coal from Consol's Booth and Robinson Run properties in West Virginia. In addition to paying King Knob a sum for each ton of coal mined and delivered to Consol, Consol paid directly to the United Mine Workers of America Fund (UMWA) all pension and health benefits that King Knob was contractually obligated to make on behalf of its miners.

In 1982, due to a reduction in the demand for coal, Consol terminated both

2

contract mining agreements with King Knob. Consol also ceased making the contributions for pension benefits and ceased reimbursing King Knob for premiums for health benefits that King Knob was contractually obligated to make on behalf of its UMWA-represented miners. King Knob complained that the terminations were wrongful, leading to settlement negotiations with Consol. They executed a written Settlement Agreement in October 1982, which is the subject of this litigation.

Under paragraph 4(b), Consol agreed to:

> promptly reimburse King Knob for all subsequent payments due to the UMWA Fund or any successor fund attributable to (i) tonnage of coal produced under the Contracts, (ii) hours worked at the mine operated under the Robinson Run Contract on or before August 31, 1982, and (iii) hours worked at the mines operated under the Booth Contract on or before June 30, 1982.

Due to significant under-funding by the late l980s of the 1950 UMWA Benefit Plan and the 1974 UMWA Benefit Plan, Congress enacted the Coal Industry Retiree Health Benefit Act (the Coal Act) in 1992, approximately ten years after the execution of the Settlement Agreement in this case, which changed the funding mechanism. If the signatory operator of an eligible beneficiary of the Combined Fund is no longer in business, the eligible beneficiary is assigned for the benefits to a "related person" of the signatory operator, which includes "a member of the controlled group of corporations which includes the signatory operator." 26 U.S.C. § 9701(c)(2)(A).

On March 30, 1994 and June 30, 1995, the Commissioner of Social Security

(Commissioner), pursuant to the Coal Act, assigned eligible beneficiaries of the Combined Fund to Anker Energy Corporation (Anker). The assignments included, among others, eligible beneficiaries who had worked for King Knob at the Booth and Robinson Run properties pursuant to the contract mining agreements between Consol and King Knob. These assignments were made to Anker, not as a coal operator, but based solely on Anker's status as a "related person" to King Knob.[1]

Anker paid the sum due from King Knob to the Combined Fund and instituted these proceedings to recover the money so paid from Consol. Upon remand, following our decision in Anker Energy corp. v. Consolidated Coal Co., 177 F.3d 161 (3d Cir.), cert. denied, 528 U.S. 1003 (1999)("Anker I"), the District Court held that neither King Knob nor Anker were eligible as a matter of law for reimbursement of the payments made under the Coal Act. Anker I at 168. We rejected the District Court's judgment as a matter of law in Anker I and concluded that the District Court's disposal of the issue on the pleadings "was premature, and that further proceedings with respect to it are necessary." Id. On remand, and after discovery, the District Court again entered summary judgment for Consol. King Knob and Anker timely appealed. For reasons that follow, we again reverse and remand for trial.

---

[1] An affiliate of Anker acquired King Knob in 1975. Anker I, 177 F.3d at 167. Consol states in its brief that King Knob was 100 percent owned by Vantrans, Inc., which in turn was 100 percent owned by Vebe International, Inc., of which Anker is a subsidiary. Consol's Brief at 6. "In human terms, King Knob and Anker are related in the third degree of consanguinity, i.e., nephew/uncle." Id.

I.

In this appeal, Anker contends, as it did in the District Court, that it has a recoverable claim against Consol for breach of the Settlement Agreement because Anker's liability is secondary and it is, therefore, subrogated to King Knob's rights under the Settlement Agreement for the payment it made to the Combined Fund. King Knob asserts that it has a claim under the Settlement Agreement because payment is not a condition precedent to Consol's obligation.

Because the pertinent history of the Bituminous Coal Wage Agreement, the Coal Act legislation, and the significant facts leading to the present appeal are set forth in Anker I, we limit our references to them.

Consol was a member of the Bituminous Coal Operators Association (BCOA) during the relevant period. As a member of the BCOA, Consol was bound by the National Bituminous Coal Wage Agreements (NBCWA) executed by the BCOA and the United Mine Workers of America (UMWA) in relation to employee benefits for UMWA-represented coal miners and retirees. A coal operator that was not a member of the BCOA could agree to be bound by the terms of an NBCWA by signing a "me too" agreement.

In the 1970s, Consol owned coal lands in West Virginia, including properties known as the Booth property and the Robinson Run property. When the demand for coal was high, Consol utilized contract mining companies to supplement its coal production. Therefore, on April 1, 1975, Consol contracted with King Knob to have it perform the

services of a contract coal miner for Consol at the Booth property. On September 1, 1977, Consol entered into a similar mining agreement with King Knob for the removal of coal under the Robinson Run property.

When utilizing a contract mining company on one of its properties, Consol had a policy of making all payments for pension and health benefits directly to the UMWA Fund that the contractor mining company contractually was obligated to make on behalf of its miners. The contract mining agreements for the Booth and Robinson Run properties contained provisions to effectuate this policy.[2]

In 1978, the structure of the earlier benefit plan known as the 1974 UMWA Benefit Plan was changed. The 1978 plan required each signatory operator, including Consol and

---

[2] The Booth contract provided in relevant part:

> 4.     Consol shall pay, on all coal delivered by [King Knob] and accepted by Consol, the prevailing rate payable to the United Mine Workers of America Welfare Retirement Plans and Trusts under the contract existing between the United Mine Workers of America and Consol, which said payments shall not be deducted or credited against the amounts to be paid to [King Knob] hereunder.

The Robinson Run contract provided in relevant part:

> 7.     King [Knob] shall furnish to Consol by the third working day of each month its man-hours for the preceding month. Consol shall pay into the United Mine Workers of America Benefit Trusts such amount as may be required under the National Bituminous Coal Wage Agreement then in force and effect, on such man-hours and on each ton of bituminous coal sold by Consol which is produced under this contract, and Consol shall furnish to King [Knob] a copy of its advice letter of payment of such sum to the Benefit Trusts.

King Knob, to provide health benefits for their active UMWA-represented miners and their UMWA-represented retirees eligible to receive health benefits from the 1974 UMWA Benefit Plan through an individual employer plan. Pursuant to the 1978 plan, King Knob, which had signed a "me too" agreement and became thereby a signatory to the then current NBCWA, implemented its own plan by purchasing health insurance for its employees. As a result, beginning in 1978, under the contract mining agreements for the Booth and Robinson Run properties, Consol reimbursed King Knob for the cost of premiums paid by King Knob to fund its individual employer plan.

## II.

Count II of the amended complaint alleges that Consol was responsible for the benefits paid on behalf of the eligible beneficiaries assigned to Anker under the Coal Act based on the provisions of paragraph 4 of the Settlement Agreement and that Consol had breached its obligations under the Settlement Agreement.[3] In its earlier and unpublished

---

[3] Specifically, Count II of the amended complaint, entitled "Liability of Consol under the Settlement Agreement," alleges:

44. Under the Settlement Agreement, Consol retained the liability for all amounts that were assessed or might be assessed for all King Knob retirees and miner who worked for King Knob prior to June 30, 1982 on the Booth contract and prior to August 31, 1982 on the Robin Run contract. Consol is obligated to pay and satisfy any and all amounts to the Combined Fund (as a successor fund) that have been and may be assessed against Anker or King Knob under the [Coal] Act for retirees, spouses and beneficiaries covered by the Consol and King Knob contract mining agreements.

opinion, the District Court granted Consol's motion for judgment on the pleadings as to Count II on two grounds. First, the District Court held that King Knob and Anker were not eligible as a matter of law for reimbursement of the payments that they were required to make under the Coal Act. Anker I, 177 F.3d at 168. The court reasoned that unlike the payments due under the Settlement Agreement, the premiums under the Coal Act were not attributable to the tonnage of coal produced and the number of hours worked under the contract mining agreements. Id. The court concluded that the Combined Fund was not a "successor fund" within the meaning of the Settlement Agreement. Id. Second, relying on Carbon Fuel Co. v. USX Corp., 100 F.3d 1124 (4th Cir. 1996), the District Court held that even if Anker was entitled to reimbursement under the Settlement Agreement, Consol would be nevertheless entitled to judgment as a matter of law because, in the court's opinion, the Coal Act had abrogated pre-Act contracts reallocating mining companies' obligations to pre-Act benefit plans. Anker I at 168.

We rejected for reasons stated in our opinion both of the grounds relied on by the District Court for its judgment as a matter of law in Anker I. We also made it very clear in that opinion that the Coal Act "does not abrogate a private party's liability to another private party for indemnification." Id. at 178.

Following our remand, Consol again filed a motion for summary judgment as to Count II on three new grounds. Specifically, it asserted first that King Knob was not entitled to reimbursement under the Settlement Agreement because it had not made any

8

payments to the Combined Fund for its retirees' health benefits. Second, because Anker was not a party to the Settlement Agreement between Consol and King Knob, Consol asserted that Anker had no right to reimbursement under the agreement for its payments to the Combined Fund. Finally, Consol contended that the indemnification clause, paragraph 4(b) of the Settlement Agreement, did not apply to health benefits, but was limited to contributions to the 1974 UMWA Pension Plan for pension benefits. In opposition to Consol's motion for summary judgment, King Knob and Anker argued that Consol had waived these arguments because they were not raised in Consol's earlier motion for judgment on the pleadings or during the appeal from the District Court's order granting that motion. They also argued that genuine issues of material fact existed precluding summary judgment.

The District Court rejected plaintiffs' waiver argument, concluding that the waiver provision of Federal Rule of Civil Procedure 12(g) applies only to a pre-answer motion and not to a motion for summary judgment. The court rejected the waiver argument also on the ground that Consol's defense that the plaintiffs had failed to state a claim upon which relief may be granted, which was the essence of its arguments, may be asserted at any time before a decision on the merits of the case.[4]

With respect to King Knob's claim for reimbursement against Consol, the District

_____

[4] King Knob and Anker on appeal have not objected to the District Court's ruling in this regard, and, therefore, we do not review the ruling.

9

Court agreed with Consol's argument that King Knob had no right to indemnification under Pennsylvania law because it had never paid the premiums for health benefits due the Combined Fund under the Coal Act. (Dist. Ct. op. at 19.) The court, accordingly, granted Consol summary judgment as to King Knob's claims of indemnity and breach of contract.

With respect to Anker's claim for reimbursement against Consol, the District Court rejected Anker's argument that it was entitled to reimbursement under the doctrine of equitable subrogation. Relying on this Court's summary of Pennsylvania's case law in Tudor Dev. Group, Inc. v. United States Fidelity & Guaranty Co., 968 F.2d 357, 361 (3d Cir. 1992), and United States Fidelity & Guaranty Co. v. United Penn Bank, 524 A.2d 958, 963-64, alloc. denied, 536 A.2d 1333 (Pa. 1987), the court concluded that the doctrine of equitable subrogation was not available to Anker for three reasons. First, Anker was primarily, not secondarily, liable under the Coal Act for the premiums due the Combined Fund for health benefits for King Knob's retirees who worked at the Booth and Robinson Run properties. Second, if subrogation applied, Anker might be subrogated to the rights of the Combined Fund, the obligee, and Anker's claim of equitable subrogation would be asserted against King Knob, rather than Consol, because Anker had conceded that King Knob was primarily liable for the benefits payments under the Coal Act. Finally, the court concluded that the equities weighed against allowing Anker to recover from Consol because the related party to King Knob was Anker, not Consol, and because King Knob was the coal operator going out of business and "orphaning" its miners.

10

III.

A.

Anker argues on appeal that the District Court erred in ruling that the doctrine of equitable subrogation was unavailable to it. It asserts that the doctrine of equitable subrogation should be liberally construed and that it should be equitably subrogated to King Knob's rights under the Settlement Agreement. Specifically, Anker argues that the District Court erred in holding that it could only be subrogated to the rights of the Combined Funds against King Knob, but not the rights of King Knob against Consol. Anker also contends that the District Court erred in holding that Anker's direct liability to the Combined Fund barred the applicability of the doctrine of equitable subrogation, and that the equities favored Consol. Anker also argues that its payment has satisfied any payment requirement necessary for the applicability of the doctrine of equitable subrogation. Finally, Anker urges that it is entitled to "common law" indemnity from Consol.

King Knob argues on appeal that the District Court erred in ruling that it had no claim for reimbursement against Consol because it had never made any payment to the Combined Fund. Specifically, King Knob asserts that payment is not a condition precedent to its claim against Consol pursuant to Consol's liability under the Settlement Agreement, that Consol's liability was triggered when payment was due the Combined Fund, and that Anker's payment on behalf of King Knob satisfied any payment

11

requirement. Finally, both appellants contend that there is no merit to Consol's alternative argument in support of its motion for summary judgment, not addressed by the District Court, that its obligation under the Settlement Agreement is restricted to the 1974 UMWA Pension Plan for pension benefits and does not extend to health benefits of the retirees, which was paid by Anker.

Consol's arguments on this appeal follow its arguments made in support of its motion in the District Court for summary judgment. Specifically, in response to Anker's argument that it is not primarily liable for the payments due the Combined Fund, Consol argues that Anker and King Knob are "jointly and severally" liable for the payments and that they are "alter egos" or "joint obligors" under the Coal Act. Consol argues additionally that Anker made the payments on behalf of itself, rather than King Knob, because its liability was primary under the Coal Act. Consol argues alternatively that its obligation under the Settlement Agreement is restricted as a matter of law to the 1974 UMWA Pension Plan for pension benefits and does not extend to health benefits of the retirees, which was paid by Anker.

B.

Anker's claim for reimbursement pursuant to the Settlement Agreement must be understood in the context of its status as a joint obligor with King Knob under the Coal Act for being a "related person" to King Knob. In treating them as essentially one entity for purposes of Coal Act liability but as two distinct entities for purposes of contractual

indemnity, the District Court erred in elevating form over substance. Admittedly, Anker was not a party to the Settlement Agreement executed between King Knob and Consol. Anker would have no standing to assert a claim for breach of contract or for contractual indemnity under the Settlement Agreement if this action were purely an action for breach of contract. Anker's status as a joint obligor with King Knob under the Coal Act, however, transforms it from an outsider to an interested insider as to the Settlement Agreement and gives it standing.

Under the Coal Act, Anker and King Knob were treated as a "single employer" and were "jointly and severally" liable for the payments to the Combined Fund. See Berwind Corp. v. Comm'r of Social Security, 307 F.3d 222, 226 (3d Cir. 2002). This court stated in Berwind: "The Coal Act sets forth several provisions that, taken together, treat a commonly controlled group of related corporations as a single employer." Id. "These 'related persons' have a broad, shared responsibility for statutory premiums. . . . [R]elated persons may be held 'jointly and severally liable for any premium required to be paid' by its affiliated signatory operator." Id. (citing 26 U.S.C. § 9704(a)). As stated by Consol in its brief, Anker and King Knob were "alter egos" or "joint obligors" for purposes of the Coal Act liability. Consol's Brief at 22-25 (citing Berwind, at 226).

Where, as here, two corporate entities are treated as a single entity or joint obligor for purposes of the Coal Act liability, they must be similarly treated for purposes of indemnity. It would be both inconsistent and inequitable not to regard the payment made

13

by the affiliate corporation Anker in behalf of its related subsidiary, King Knob, as payment for purposes of contractual indemnity. Undoubtedly, but for King Knob's inability to pay, Anker would not have made the payments. As between them, King Knob as the employer was primarily liable under its agreements with UMWA and Anker was secondarily liable under the Coal Act obligations. When Anker became liable under the Coal Act as the alter ego of King Knob, as asserted by Consol, Anker's payments in behalf of King Knob must also be deemed as King Knob's payments by virtue of their status as joint obligors. See Restatement (Second), Contracts § 293 (1981). Accordingly, we hold that because King Knob and Anker are a single entity for purposes of liability under the Coal Act, they must be similarly regarded for purposes of contractual indemnity to recover the payments made pursuant to the Act.

C.

We reject Consol's alternative argument that the indemnity clause, paragraph 4(b) of the Settlement Agreement, does not apply as a matter of law to the premiums due the Combined Fund for health benefits because that clause, according to Consol, applies only to payments for pension benefits due the 1974 Pension Trust or a successor thereto. We note that from 1975 to 1978 Consol had a policy of making all payments directly for both pension and health benefits on behalf of King Knob to avoid the risk of a strike over benefits at a contract mine. (Dist. Ct. Op. at 4.) We note also that from 1978 to at least 1982, Consol directly reimbursed King Knob for the cost of health insurance premiums it

14

paid to fund its individual employer plan, rather than making payments directly to the 1974 UMWA Benefit Plan. Id. at 5-6. The history of the arrangement between Consol and King Knob, during which Consol had paid health benefits on behalf of King Knob or reimbursed King Knob for the health insurance premiums paid by King Knob, belies Consol's argument that the indemnity clause does not apply as a matter of law to such reimbursement. The language of the indemnity clause, paragraph 4(b) of the Settlement Agreement, does not so provide.

We reiterate now, as we stated in Anker I, 177 F.3d at 176-77, that there are genuine issues of material fact as to the nature and scope of Consol's obligation under the indemnity clause, precluding summary judgment.

IV.

For the foregoing reasons, the judgment of the District Court as to Count II of the amended complaint will be reversed and the case remanded to the District Court with directions to proceed to trial to ascertain whether Consol was obligated under the Settlement Agreement to reimburse Anker/King Knob for their payments made under the Coal Act. Costs taxed against Consolidated Coal Company.

TO THE CLERK:

Please file the foregoing opinion.

                                                             /s/ Max Rosenn
                                                          Circuit Judge